[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a zoning enforcement action raising the question whether and to what extent the approval of a location for a repairer's license allows a use that is otherwise in violation of the zoning regulations. This action was brought by the Orange Town Plan Zoning Commission (hereafter called "the Commission") and the zoning enforcement officer, Paul Dinice, to limit the business uses on property at 217 Derby Avenue in Orange. The subject property is owned by the defendant Michael Clemens, who is also the president of Mike's Auto Repair, Inc., which operates the business on the site.
The Town of Orange adopted zoning effective January 12, 1938. The zoning regulations in effect in 1944, subsequently and at this time are the permissive type of zoning regulations, so that any use which is not specifically permitted is automatically excluded. Gada v. Zoning Board of Appeals, 151 Conn. 46, 48; Park Regional Corporation v. Town Plan Zoning Commission, 144 Conn. 677, 682. The property is now and has always been in a residential zone, but use of the property as a gasoline service station commenced prior to zoning in Orange. The permitted uses, accessory uses or special uses in a residential zone have never included gasoline service stations or automobile repair facilities. Repairing of motor vehicles has only been allowed the in business and industrial zones.
While the subject property was used as a gasoline service station prior to zoning, and the prior owner, Nicholas Thomas, may have carried on uses incidental to a CT Page 4687 gasoline service station license, he did not do repair work or uses allowed under a repairer's license until 1946. He filed an application in 1946 to move the existing building and to construct a new and larger building for the service station, including a lift for automobiles and racks for the storage of automobile accessories. The application stated that the owner did not intend to do a general repair business, but would confine the business to lubrication, tuning up motors, and changing tires and oil. The request for a variance was granted by the zoning board of appeals on April 22, 1946, allowing construction of a new gasoline service station in accordance with the petition and plans. The variance allowed extension of the business use in the new building to cover "light repair work", but that approval was to be construed to include any dismantlement of motor except the dismantling of motors for the purposes of tune-up, and shall not include the performance of any body or fender work, nor any painting operation, nor the receipt, storage or repair of wrecked or junked motor vehicles." On May 8, 1946 Thomas applied to the zoning board of appeals (Board) for approval of the location for a repairer's license pursuant to section 214f of the 1941 supplement of the General Statutes, which is now section 14-54 C.G.S. A hearing was held on the application pursuant to section 215f (now section 14-55 C.G.S.). On the same date the Board granted the application "for approval of location for repairer's license", referencing the factors for location approval in the statute.
In December 1954 Thomas applied to the zoning board of appeals to extend the garage building because of an increase in business. While the application stated that three car lifts and a front end machine would be installed, there was no indication that the business operations would be extended to any of the work prohibited in the 1946 variance. The Board approved the application on January 10, 1955 because, as stated in its resolution, there was no change in the character of the business. Prior to and after the purchase of the property by Clemens in 1984, the Department of Motor Vehicles has periodically issued a general repairer's license for the property. When a repairer's license is renewed the zoning board of appeals has discretion under section 14-55 to waive a public hearing on the application. On February 6, 1984 the Board denied an application for a new and used car dealership license but recertified the location for a general repairer's license. Except for the enlargement of the garage building in 1955 no variance has been granted changing or extending the uses permitted on the property since 1946. CT Page 4688
The Town claims that some of the repair work and business uses now carried on at the site, namely body and fender repairs, painting of motor vehicles, and storage and repair of wrecked or junked motor vehicles violates the zoning regulations because it exceeds the uses authorized by the 1946 variance. This action was brought because the defendants failed to comply with or appeal a cease and desist order issued by the zoning enforcement officer. The defendants claim that the general repairer's license allows them to engage in those uses and have filed two related special defenses, claiming that the Town has approved the present use of the business in 1955 and that it has approved the site for a general repairer's automotive business in and since 1955.
While the plaintiffs are correct that failure of a property owner to appeal a cease and desist order of the zoning enforcement officer to the zoning board appeals under sections 8-6(1) and 8-7 of the General Statutes, may preclude a claim in subsequent litigation that the property owner has a valid nonconforming use, Greenwich v. Kristoff, supra, 519, there are exceptions to the doctrine of failure to exhaust available administrative remedies, and one-of them is that an administrative appeal is not required where the interpretation of statutes is needed. Aaron v. Conservation Commission, 178 Conn. 173, 178; Powers v. Ulichny, 185 Conn. 145,147. It would be stretching a point to conclude that a zoning board of appeals is competent to decide a question whether the granting of a repairer's license under sections14-51, 14-54 and 14-55 and the renewal of it gave the defendants the right to engage in their present uses of the property, as this involves, at least in part, a question of statutory interpretation. Accordingly, the defendants' failure to appeal the cease and desist order in this case was not barred by failure to exhaust administrative remedies.
The rights of the defendants to operate a nonconforming gasoline service station, and their rights under the general repairer's license and variances granted by the zoning board of appeals are a prerequisite to deciding if there is a zoning violation on the subject property. Zoning regulations apply to both permitted and nonconforming uses, Russo v. East Hartford, 179 Conn. 250, 257, even though nonconforming uses are allowed to continue despite changes in the zoning ordinance. A nonconforming use is an existing use established prior to zoning regulations, the continuation of which is allowed by statute or the zoning regulations. Melody v. Zoning Board of Appeals, 158 Conn. 516, 519. A variance is authority granted to the owner to use his property in a manner otherwise forbidden by the zoning regulations. Grillo CT Page 4689 v. Zoning Board of Appeals, 206 Conn. 362, 372; Carlson v. Zoning Board of Appeals, 158 Conn. 86, 90. See also Adolphson v. Zoning Board of Appeals, 205 Conn. 703, 710. Section8-2 of the General Statutes, allowing the continuance of nonconforming uses, protects the right of the user to continue only the same use of the property which existed before the date of adoption of the zoning regulations. Karls v. Alexandra Realty Corporation, 179 Conn. 390, 398.
When zoning was adopted the subject property was used as a gasoline service station, but was not used for repair of motor vehicles. Moreover, the fact that the prior owner had a gasoline pump license for the location did not authorize him to engage in motor vehicle repairs. Section 211f of the 1941 supplement (now section 14-51 C.G.S.) provided that the lubricating of motor vehicles, changing of tires and tubes or installing of light bulbs, windshield wiper blades, spark plugs, fan belts or other similar services incidental to the sale of motor vehicle fuels could not be construed as allowing the holder of a gasoline pump license to act as a repairer of motor vehicles.
The granting of the variance to enlarge the gasoline station building and allow the service station to continue as a nonconforming use is not an extension of the authorized use of the premises to carry out a repair business. Raymond v. Zoning Board of Appeals, 164 Conn. 85, 87, 88. The owner recognized this by making a separate application for location approval for a repairer's license after the variance was approved in 1946. Where a nonconforming use of property exists, it must be contained within the limits of the use in existence when the regulations were adopted, so that it is illegal to alter a building containing a nonconforming use where the structural changes amount to enlargement of the area used for that purpose. Guilford v. Landon, 146 Conn. 178,182, 183. The Board found hardship as to the size of the building in 1946 and 1955, and those variances allowed expansion of the building. Where a nonconforming use of the property exists, it cannot be changed to another use. Macaluso v. Zoning Board of Appeals, 167 Conn. 596, 600
(change from package store permit to drug store/liquor permit); Salerni v. Schuey, 140 Conn. 566 (change from sale of beer to sale of all types of liquor); Johnny Cake, Inc. v. Zoning Board of Appeals, 180 Conn. 296, 301 (change from watchtower to radio transmitter tower); Raymond v. Zoning Board of Appeals, supra, (expansion of gasoline service station to allow auto repairs).
In addition to allowing enlargement of the building, the variance allowed some expansion of the uses on the subject CT Page 4690 property to include light repair work, but specifically defined what was excluded under that term. The zoning regulations were varied only to that extent. One month later, when the Board approved the location for a repairer's license, it authorized use of the premises for the "light repair work" allowed by the variance. It was not expanding the authorized use of the premises to general repairs or all the uses allowed by section 211f under a repairer's license. While section 14-51 of the General Statutes now contains a definition of "limited repairer" that distinction did not exist in section 211f in 1946. After the Board approved the location for motor vehicle repairs, the Department of Motor Vehicles issued a general repairer's license under section 213f. The license has been periodically renewed by the Commissioner and the site has been periodically recertified by the zoning board of appeals as provided by statute.
A zoning board of appeals has several functions imposed upon it by statute. The function of approving variances of the zoning regulations under section 8-6(3) C.G.S. is separate and distinct from its function in reviewing location approvals as agent of the state for the Commissioner of Motor Vehicles. Mason v. Board of Zoning Appeals, 143 Conn. 634,637; Petrillo v. Board of Zoning Appeals, 147 Conn. 469, 472. When the zoning board of appeals is performing one of the location approvals, such as a location for repairing motor vehicles under sections 14-54 and 14-55, or approval of a gasoline station location under sections 14-321 and 14-322 of the General Statutes, it acts as an agent of the state and is not performing local zoning functions. Clark Heating Oils, Inc. v. Zoning Board of Appeals, 159 Conn. 234, 239 Chevron Oil Co. v. Zoning Board of Appeals, 170 Conn. 146, 154; Etzel v. Zoning Board of Appeals, 155 Conn. 539, 541; Mason v. Board of Zoning Appeals, supra, 637. The granting of zoning approval for the use of the property, and certifying approval of the location to the Commissioner of Motor Vehicles are two distinct decisions, and the zoning board of appeals acts in different capacities and applies different sets of standards. Sun Oil Co. v. Zoning Board of Appeals, 154 Conn. 32, 35; Tucker v. Zoning Board of Appeals, 151 Conn. 510, 514. Two separate applications were needed here, and approval of the location necessarily depended on the Board's granting of the variance. Consiglio v. Board of Zoning Appeals, 153 Conn. 433,435. In fact the Board could not have granted the certification of location approval unless it had first granted a variance to allow motor vehicle repairs in a residential zone. Clark Heating Oils, Inc. v. Zoning Board of Appeals, supra, 239, 241; Sun Oil Co. v. Zoning Board of Appeals, supra, 35, 36. CT Page 4691
The subsequent recertification of location approval for a repair business was limited to that action, and cannot be construed as removal of the conditions attached to the 1946 variance or an extension of the use allowed under the variance. That would require another variance application, proof of hardship, and that the proposed use did not violate the comprehensive plan. Grillo v. Zoning Board of Appeals, supra, 368. There is nothing in the record to indicate that any such variance was ever granted. The 1946 variance is therefore limited to its terms and cannot be extended to cover automobile repairs not authorized by the variance. Raymond v. Zoning Board of Appeals, supra.
Since there was apparently no change in the suitability of the location as a repair facility since 1946, the Board, when faced with renewal requests from the Department of Motor Vehicles under section 14-55, could not refuse to recertify the location. Mason v. Board of Zoning Appeals, supra, 638, 639. The periodic renewal of the location approval, however, cannot be construed as an enlargement of the uses allowed by variance on the subject property. Members of an administrative agency are presumed to have done their duty properly unless the contrary appears. Murach v. Planning and Zoning Commission, 196 Conn. 192, 205. When the Board recertified the location, it was merely confirming that it was still suitable for the use that it had originally approved in 1946. Approval of all uses allowed under a general repairer's license would be approving a location which was in violation of the zoning regulations, which would be an illegal act. Raymond v. Zoning Board of Appeals, supra, 89; Clark Heating Oils, Inc. v. Zoning Board of supra, 241. The Board could not have granted an for a certificate of approval to allow all uses under a general repairer's license. Rubino and Inc. v. Zoning Board of Appeals, 151 Conn. 706, 707, it cannot be presumed that it did. Property that is used in violation of the zoning regulations is not suitable under location approval statute. Clark Heating Oils, Inc. v. Zoning Board of Appeals, supra, 242.
The plaintiffs have proven that any motor vehicle repair or similar activities beyond the limited repair work authorized by the 1946 variance violates the zoning regulations, even if it is repair work which a licensed repairer may perform under section 14-51 of the General Statutes at a location approved as suitable for a repairer's license. For the reasons previously stated, there is no merit to the special defenses.
Where the zoning enforcement officer requests an CT Page 4692 injunction under section 8-12 of the General Statutes or the municipality claims one on equitable grounds, the municipality and its agents do not have to allege and prove either irreparable harm to the municipality or lack of an adequate legal remedy. Johnson v. Murzyn, 1 Conn. App. 176,179, cert. denied 192 Conn. 802; Greenwich v. Kristoff,2 Conn. App. 515, 521, cert. denied 194 Conn. 807; Conservation Commission v. Price, 193 Conn. 414, 429. The municipality only has to prove that there is a violation of the ordinance, Johnson v. Murzyn, supra, 180, and that it is not inequitable to enforce the ordinance, Greenwich v. Kristoff, supra, 523. While an injunction is discretionary, there is no indication here of any misleading conduct on the part of the town or any compelling reason why an injunction should not be issued.
In addition to an injunction, the plaintiffs have requested a civil penalty of $2,500, "other civil penalties", attorney's fees and costs under section 8-12 of the General Statutes. That statute provides in part that if a person fails to discontinue a zoning violation after being served with a cease and desist order he "shall be subject to a civil penalty not to exceed two thousand five hundred dollars, payable to the treasurer of the municipality." The statute contains other provisions for fines, with the amount depending upon whether or not the violation was wilful, plus the possibility of incarceration for wilful violations. This is a civil action and not a criminal prosecution, and the provision for fines is not applicable. Section 8-12 also states that "if the court renders judgment for such municipality and finds that the violation was wilful, the court shall allow such municipality its costs, together with reasonable attorney's fees to be taxed by the court." Even though the legal argument of the defendants has been rejected, their position was not taken in bad faith and the violation of the zoning regulations was not wilful. For that reason it is not appropriate to award attorney's fees and costs under section 8-12. Planning and Zoning Commission v. Derosier, 15 Conn. App. 550, 560. The amount of the civil penalty is optional. The defendants are ordered to pay a civil penalty of $1,000 to the Town.
A permanent injunction is issued against the defendants from carrying on any auto body or fender repair work or painting operations, from receiving, storing or repairing wrecked or junked motor vehicles, or any other automobile repair operations other than those allowed by prior variances granted by the zoning board of appeals. The defendants are ordered to remove any motor vehicles not complying with the Orange Zoning Regulations and this injunction within 15 days of this order. CT Page 4693
ROBERT A. FULLER, JUDGE